UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL E. RIGGINS,

                    Petitioner,

v.                                    Case No. 3:12-cv-72-J-34JBT

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.

_____

**ORDER**

**I. Status**

     Petitioner Michael Emiel Riggins, an inmate of the Florida penal system, initiated this action on January 23, 2012, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. In the Petition, Riggins challenges a 2008 state court (Clay County, Florida) judgment of conviction for burglary of a structure. Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Respondents' Response to Petition for Writ of Habeas Corpus (Response; Doc. 14) with exhibits (Resp. Ex.). On May 9, 2012, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 9), admonishing Riggins regarding his obligations and giving Riggins a time frame in which to submit a reply. Riggins notified the Court that he did not intend to file a reply, but instead would rely on his allegations and claims as stated in the Petition. <u>See</u> Petitioner's Notice to the Court (Doc. 16).

On December 9, 2014, the Court directed the Respondents to supplement the record by submitting the jury selection transcript and providing a copy to Riggins. <u>See</u> Order (Doc. 17). The Court also ordered Respondents to file a Supplemental Response, addressing the merits of ground one, including the name of the venire person at issue in ground one, with appropriate citations to the transcript. Additionally, the Court advised Riggins that he could file a Supplemental Reply, if he elected to do so. Respondents filed a Supplemental Response to Issue One (Supplemental Response; Doc. 23), in which they asserted that Riggins had not provided the name of the venire person. <u>See</u> Supplemental Response at 4 n.3. The Court therefore directed Riggins to provide the name of the venire person and citations to relevant portions of the transcript, or voluntarily dismiss the ground if he no longer intended to pursue the ground. <u>See</u> Order (Doc. 24). On April 10, 2015, Riggins advised the Court that "Anthony Rote was the only African American and struck juror at Riggins' trial." Petitioner's Notice to the Court (Notice; Doc. 25) (citation omitted). This case is ripe for review.

## II. Procedural History

On May 8, 2008, the State of Florida charged Riggins with burglary of a structure. Resp. Ex. A at 6, Information. Riggins proceeded to trial in October 2008, <u>see</u> Resp. Exs. A and B, Transcripts of the Jury Trial (Tr.), at the conclusion of which, on

October 9, 2008, a jury found him guilty of burglary, as charged. See Resp. Ex. A at 50, Verdict; Tr. at 112. On November 12, 2008, the court sentenced Riggins to a term of imprisonment of ten years. Resp. Ex. A at 111-29, Transcript of the Sentencing; 88-93, Judgment.

On appeal, Riggins, with the benefit of counsel, filed an initial brief, arguing that his right to trial by jury was violated when the sentencing court rather than the jury made the habitual felony offender findings that authorized the imposition of a sentence greater than the statutory maximum for the offense of burglary of a structure. Resp. Ex. D. The State filed an answer brief. Resp. Ex. E. On November 19, 2009, the appellate court affirmed Riggins' conviction and sentence per curiam without issuing a written opinion, see Riggins v. State, 22 So.3d 75 (Fla. 1st DCA 2009); Resp. Ex. F, and the mandate issued on December 7, 2009, see Resp. Ex. F. Riggins did not seek review in the United States Supreme Court.

On May 4, 2010, Riggins filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. In his request for post conviction relief, Riggins asserted that counsel was ineffective because she failed to: challenge the State's motivation for striking the only African-American juror from the jury venire (ground one), and object to "pause-freezing" the videotaped recording that was played for the jury (ground two).

3

Resp. Ex. G at 1-10. The circuit court denied Riggins' motion on March 18, 2011. Id. at 17-37. On August 3, 2011, the appellate court affirmed the trial court's denial per curiam, see Riggins v. State, 67 So.3d 205 (Fla. 1st DCA 2011); Resp. Ex. H, and the mandate issued on August 30, 2011. See Resp. Ex. H.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d); Response at 2 n.2.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

4

## V. Standard of Review

The Court will analyze Riggins' claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S.Ct. 770, 784 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

> Under AEDPA, when the state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas

relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495).

For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. White v. Woodall,-U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 134 S.Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of

> Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); <u>accord</u> <u>Richter</u>, 131 S.Ct. at 784.
>
> "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim implicates both AEDPA and <u>Strickland</u>, our review is doubly deferential. <u>Richter</u>, 131 S.Ct. at 788 ("The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citations and internal quotation marks omitted)). [A petitioner] must establish that no fairminded jurist would have reached the Florida court's conclusion. <u>See</u> <u>Richter</u>, 131 S.Ct. at 786-87; <u>Holsey v. Warden, Ga. Diagnostic Prison</u>, 694 F.3d 1230, 1257-58 (11th Cir. 2012). "If this standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 131 S.Ct. at 786....

<u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 760 F.3d 1284, 1293-94 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 2015 WL 1228919 (U.S. May 18, 2015) (NO. 14-8875, 14A694); <u>see also</u> <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1230 (11th Cir. 2014), <u>petition for cert</u>. <u>filed</u>, (U.S. Feb. 23, 2015) (NO. 14-8589, 14A549).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's

rationale for such a ruling. <u>Hittson</u>, 759 F.3d at 1232 ("[T]here is no AEDPA requirement that a state court explain its reasons for rejecting a claim[.]"); <u>Richter</u>, 131 S.Ct. at 785 (holding that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002). Thus, to the extent that Riggins' claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id</u>., at 687, 104 S.Ct. 2052.

<u>Richter</u>, 131 S.Ct. at 787-88. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010)(citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

"[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id</u>. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411,

> 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument
> that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court
> may not disturb a state-court decision denying
> the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at
> 788.

<u>Hittson</u>, 759 F.3d at 1248; <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123

(2009); <u>see also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th

Cir. 2004) ("In addition to the deference to counsel's performance

mandated by <u>Strickland</u>, the AEDPA adds another layer of

deference--this one to a state court's decision--when we are

considering whether to grant federal habeas relief from a state

court's decision."). "Surmounting <u>Strickland</u>'s high bar is never an

easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Riggins asserts that counsel (Assistant Public

Defenders Christina Guidry and Rosa Price) were ineffective because

they failed "to challenge the State's motivation for striking the

only African-American juror from the jury venire." Petition at 15.

Riggins raised the ineffectiveness claim in his Rule 3.850 motion.

<u>See</u> Resp. Ex. G at 6-7. Identifying the two-prong <u>Strickland</u>

ineffectiveness test as the controlling law, the circuit court

denied the post conviction motion with respect to this claim,

stating in pertinent part:

> In ground one, Defendant alleges that
> counsel was ineffective by failing to raise an

10

objection to the State's peremptory striking of an African-American juror.[1] The Fourth District Court of Appeal addressed the exact same claim in <u>Jenkins v. State</u>, 824 So.2d 977 (Fla. 4th DCA 2002). The appellate court affirmed the summary denial of this claim, writing:

> [W]e do not see how the claim of a lawyer's failure to raise a <u>Neil</u>[2] objection could ever be the basis for post-conviction relief for incompetence of counsel. Unlike the situation where a biased juror served on a jury, the failure of a lawyer to raise a <u>Neil</u> challenge does not mean that the jury was biased. The state might have acted in bad faith in exercising its peremptory challenges, but the jury trying the case might have been simon-pure in its objectivity and ability to follow the law. In such a situation, there can be no showing that counsel's failure to assert a <u>Neil</u> challenge had any effect on the defendant's ability to receive a fair trial. Thus, there can be no prejudice sufficient to support post-conviction relief.

<u>Id</u>. at 984. Following <u>Jenkins</u>, courts have held that post conviction relief cannot be granted in this context unless counsel's error resulted in a jury that was not impartial.

---

[1] According to Riggins, Anthony Rote was the African-American juror that the State used a peremptory challenge to strike. <u>See</u> Notice (Doc. 25).

[2] <u>See</u> <u>State v. Neil</u>, 457 So.2d 481 (Fla. 1984), <u>receded</u> <u>from</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>State v. Johans</u>, 613 So.2d 1319, 1321 (Fla. 1993) ("[W]e hold that from this time forward a <u>Neil</u> inquiry is required when an objection is raised that a peremptory challenge is being used in a racially discriminatory manner. We recede from <u>Neil</u> and its progeny to the extent that they are inconsistent with this holding.").

> _Yanes v. State_, 960 So.2d 834 (Fla. 3d DCA
> 2007). Therefore, Defendant has not made a
> legally cognizable claim for which relief can
> be granted as he cannot establish the required
> _Strickland_ prejudice. Accordingly, Defendant's
> first ground for relief is denied.

Resp. Ex. G at 18-19. On Riggins' appeal, the appellate court
affirmed the trial court's denial per curiam. See _Riggins_, 67 So.3d
205.

Assuming the appellate court affirmed the denial on the
merits, there are qualifying state court decisions. Thus, the Court
considers this claim in accordance with the deferential standard
for federal court review of state court adjudications. After a
thorough review of the record and the applicable law, the Court
concludes that the state courts' adjudications of this claim were
not contrary to clearly established federal law, did not involve an
unreasonable application of clearly established federal law, and
were not based on an unreasonable determination of the facts in
light of the evidence presented in the state court proceedings.
Thus, Riggins is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of
this claim are not entitled to deference, Riggins' ineffectiveness
claim is still without merit. The record fully supports the trial
court's conclusion. In evaluating the performance prong of the
_Strickland_ ineffectiveness inquiry, there is a strong presumption
in favor of competence. See _Anderson v. Sec'y, Fla. Dep't of Corr._,
752 F.3d 881, 904 (11th Cir. 2014), _cert_. _denied_, 135 S.Ct. 1483

12

(2015). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, Riggins must establish that no competent attorney would have taken the action that counsel, here, chose.

Moreover, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Ward v. Hall</u>, 592 F.3d at 1164 (quotations and citation omitted); <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On the record in this case, counsels' performance was well within the wide range of professionally competent assistance. The voir dire transcript, <u>see</u> Notice of Filing Transcript of Jury

Selection (JS Tr.; Doc. 22), provides the necessary facts for resolution of Riggins' ineffectiveness claim. On October 6, 2008, the court began with thirty-five prospective jurors, and ultimately selected three juries (six jurors and one alternate on each jury) for three separate trials. Id. at 3. The first jury was for Johvany Ashley's trial, id. at 7; the second jury for Alrah Bynum's trial,[3] id. at 116; and the third jury for Riggins' trial, id. at 145. The transcript of all three jury selections is silent as to the race of any of the prospective jurors. According to Riggins, Anthony Rote was the only African-American venire member when his jury was selected. Respondents accept Riggins' assertion "as true, despite no record proof." Supplemental Response at 3.

Initially, the court asked the thirty-five prospective jurors a variety of background questions. Id. at 3-112. The following colloquy ensued with respect to the background of prospective juror Anthony Rote (Juror No. 4):

> THE COURT: Okay. Thank you. Anthony, is it, Rote?
>
> PROSPECTIVE[4] JUROR: Yes, sir.

---

[3] Assistant State Attorneys James Boyle and Darcy Galnor were the prosecutors for the Ashley and Bynum trials. For Riggins' trial, the prosecutors were Ray Deal and Mike Williams.

[4] The transcript deems the venire persons to be "perspective" jurors, instead of "prospective" jurors. Respondents advised the Court that they did not return the transcript for correction due to the "difficulty in obtaining the transcript at all[.]" Supplemental Response at 2 n.2. The Court will refer to them as prospective jurors.

THE COURT: What part of the county [do] you live, sir?

PROSPECTIVE JUROR: Fleming Island.

THE COURT: Fleming Island. How long?

PROSPECTIVE JUROR: For 13 years.

THE COURT: Are you employed?

PROSPECTIVE JUROR: No.

THE COURT: No?

PROSPECTIVE JUROR: No.

THE COURT: Student?

PROSPECTIVE JUROR: No.

THE COURT: What do you do?

PROSPECTIVE JUROR: I'm in limbo. I might be moving to Virginia.

THE COURT: All right. How long [have] you been out of high school?

PROSPECTIVE JUROR: About a year.

THE COURT: And your marital status?

PROSPECTIVE JUROR: I'm single.

THE COURT: Single. Have you served on a jury before?

PROSPECTIVE JUROR: No, sir.

Id. at 14-15. Rote also responded to other questions related to his understanding of the law. When the judge asked why Jaguars football players on the field are not arrested for battery when a battery is defined as a touching or striking, Rote responded that "they're

15

willing." Id. at 74-75. As to the prosecutor's inquiry relating to

non-serious bodily harm, the following colloquy ensued.

> [PROSECUTOR]: Okay. Mr. Rote, can you
> think of any other examples of just bodily
> harm?
>
> PROSPECTIVE JUROR: (Inaudible.)
>
> [PROSECUTOR]: Okay. I don't think I'd
> call it anything like that, but very good.
>
> PROSPECTIVE JUROR: Yeah, just getting hit
> in any kind of way. It doesn't have to be a
> bruise. The body heals fast.

Id. at 77-78. The prosecutor later asked if any of the prospective

jurors had heard of presumption of innocence. Id. at 98.

> [PROSECUTOR]: No hands. Okay.
> Mr. Rote, what do you think that means,
> the presumption of innocence?
>
> PROSPECTIVE JUROR: That there is a chance
> that they could be innocent and not be guilty
> -- (inaudible).
>
> [PROSECUTOR]: Okay.
>
> PROSPECTIVE JUROR: There is a little bit
> of innocence and there's -- (inaudible) --
> criminal case.

Id. at 98-99. In selecting a jury for the Ashley trial, the State

used its first peremptory challenge to strike Anthony Rote. Id. at

112. Ashley's defense counsel (Jim Thies) did not object. Id. at

113.

Next, a jury was selected for Bynum's trial. Again, the

prosecutors were Boyle and Galnor. The court did not repeat the

background questions.[5] After a brief voir dire, <u>see</u> <u>id</u>. at 119-35, peremptory challenges were exercised, <u>see</u> <u>id</u>. at 136-38. Notably, the court instructed the prosecutor and defense counsel to start with juror number 18 and "work to the end of the 35."[6] <u>Id</u>. at 136.

Lastly, a jury was selected for Riggins' trial. The prosecutors (Ray Deal and Mike Williams) and defense counsel (Christina Guidry and Rosa Price) were different from the first two cases. The prosecutors in Riggins' case inherited the venire as it remained after two other juries had been selected. Toward the end of defense counsel's questioning, she inquired as follows:

> [DEFENSE COUNSEL]: Mr. Riggins, as you can see, is a black man. Is anybody going to have a problem dealing with the fact that Mr. Riggins is black?
>
> [PROSPECTIVE JURORS]: (Negative responses.)
>
> [DEFENSE COUNSEL]: Anybody going to find it harder to find him -- acquit him because he's black?
>
> [PROSPECTIVE JURORS]: (Negative responses.)

<u>Id</u>. at 159. After voir dire, the court asked defense counsel if she needed "some time" to confer; she affirmed; and a brief recess was taken. <u>Id</u>. at 162. The court instructed the prosecutor and defense

---

[5] <u>See</u> JS Tr. at 116 ("The next two will be much quicker since most of these questions have been asked and won't be asked again. So my part will take five minutes at the most. Doing three at a time saves a lot of time overall.").

[6] As previously stated, Anthony Rote was juror number 4.

17

counsel that the State should begin with juror number 32 and then "we'll go back to Number 1." _Id_. The State used its second peremptory challenge to strike Anthony Rote with no objection from defense counsel. _Id_. at 163.

On this record, Riggins failed to carry his burden of showing that his counsels' representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Riggins has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the State's striking Anthony Rote. _See_ _Price v. Sec'y, Fla. Dep't of Corr._, 548 F. App'x 573, 576 (11th Cir. 2013) ("[W]e agree with the district court that 'there is no evidence that an African American juror would have seen the evidence any differently than the white jurors seated on the jury.' . . . As the district court noted, race was not the central theme of this case, and did not play a significant role."), _cert_. _denied_, 134 S.Ct. 1896 (2014); _Sneed v. Fla. Dep't of Corr._, 496 F. App'x 20, 27 (11th Cir. 2012) (per curiam) ("Indeed, Sneed has not shown that, had counsel objected, his challenge would have been successful, nor is it clear that the second prospective black juror being on the jury would have carried a reasonable probability of changing the outcome of the trial.") (citation omitted). Therefore, Riggins'

ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.[7]

## B. Ground Two

As ground two, Riggins asserts that counsel were ineffective because they failed to object to the prosecutor "pause-freezing" the videotaped recording of him "glancing at a cash register as he quickly passed by it." Petition at 17. Riggins raised the ineffectiveness claim in his Rule 3.850 motion. See Resp. Ex. G at 8. The circuit court ultimately denied the post conviction motion with respect to this claim, stating in pertinent part:

---

[7] See Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (stating that, where petitioner claims counsel should have objected, "we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal."). The Court noted that its decision in Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310 (11th Cir. 2003) (per curiam), "is not to the contrary." Purvis, 451 F.3d at 739.

> [In Davis, 341 F.3d 1310] trial counsel objected during voir dire to the Batson error that was being committed but when his objection was rejected, counsel failed to take the next step of renewing that objection after the conclusion of voir dire; in the Florida courts that is a necessary step before the issue may be reviewed on appeal. Id. at 1312. This Court held that because the failure of counsel was solely in his role as appellate counsel at trial (those are not the words we used in Davis, but it is what we meant), the prejudice inquiry should focus on the effect that counsel's omission at trial had on the appeal. Id. at 1315-16.

Id.

In ground two, Defendant alleges that counsel was ineffective for failing to object to the State's use of a still-frame image taken from a surveillance camera that showed "Defendant peering at the cash register." (Defendant's Motion for Post Conviction Relief, page 8) . . . . Defendant's claim is without merit. Defendant alleges that his counsel should have objected because the State's "leaving this still-frame image hovering above the jury throughout the presentation of the State's case was grossly unfair and prejudiced the jury against him." (Defendant's Motion for Post Conviction Relief, page 8.) Having reviewed the trial transcript, the Court notes that a still-frame image was used by the State, but only for a brief period of time at the end of the State's closing argument. (Exhibit "C," pages 82-85.) The image was not used, as Defendant asserts, throughout the presentation of the State's case. In addition, during defense counsel's closing argument, she made the same argument that forms the basis of Defendant's claim:

> COUNSEL: Now the state's put a still of that on there and they've kept it on there for a long time so it looks like he's leering in the cash drawer. But if you remember the real time video, he looks and he looks away. That is human nature to look and look away. That is what you saw in the video.

(Exhibit "C," pages 85-86.)[8] Thus, the Court finds counsel was not ineffective for failing to object to the State's use of the still-frame image. In addition, even assuming it was error in not objecting, Defendant has failed to demonstrate prejudice. . . . [H]e also fails to establish either prong of Strickland.

---

[8] See Tr. at 87-88.

Resp. Ex. G at 19-20. On Riggins' appeal, the appellate court affirmed the trial court's denial per curiam. See <u>Riggins</u>, 67 So.3d 205.

Given the record in the instant action, the appellate court may have affirmed the denial of Riggins' motion for post conviction relief on the merits. If the appellate court addressed the merits, Riggins would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Riggins is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Riggins' claim is still without merit. The trial court's conclusion is fully supported by the record. Based on the record in the instant case, counsels' performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Riggins has not

shown prejudice. Thus, Riggins' ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Riggins seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Riggins "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Riggins appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of May, 2015.

MARCIA MORALES HOWARD
United States District Judge

```
sc 5/29
c:
Michael Emiel Riggins
Ass't Attorney General (McCoy)
```